Benjamin Heikali (SBN 307466)
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
E-mail:   bheikali@faruqilaw.com
[Additional Captions on Signature Page]
*Attorney for Plaintiff Scott Fineberg*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT FINEBERG, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> CAVIUM, INC., SYED B. ALI, ANTHONY S. THORNLEY, SANJAY MEHROTRA, EDWARD H. FRANK, BRAD W. BUSS, and MADHAV V. RAJAN, <br><br> Defendants. <br> . | Case No.: <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(A) AND 20(A) OF THE SECURITIES EXCHANGE ACT OF 1934** <br><br><br> **JURY TRIAL DEMANDED** |

Plaintiff Scott Fineberg ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of Cavium, Inc. ("Cavium" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with Cavium, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100 in connection with the proposed merger (the "Proposed Merger") between Cavium and Marvell Technology Group Ltd. ("Marvell").

2.      On November 19, 2017, the Board caused the Company to enter into an agreement and plan of merger ("Merger Agreement"), pursuant to which the Company's shareholders stand to receive $40.00 in cash and 2.1757 shares of Marvell common stock for each share of Cavium stock they own (the "Merger Consideration"), representing a transaction value of $6 billion.  Cavium shareholders are expected to own 25% of the post-closing combined company.

3.      On December 21, 2017, in order to convince Cavium shareholders to vote in favor of the Proposed Merger, the Board authorized the filing of a materially incomplete and misleading Form S-4 Registration Statement (the "S-4") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.  The materially incomplete and misleading S-4 independently violates both Regulation G (17 C.F.R. § 244.100) and SEC Rule 14a-9 (17 C.F.R. 240.14a-9), each of which constitutes a violation of Section 14(a) and 20(a) of the Exchange Act.

4.      While touting the fairness of the Merger Consideration to the Company's shareholders in the S-4, Defendants have failed to disclose certain material information that is necessary for shareholders to properly assess the fairness of the Proposed Merger, thereby violating SEC rules and

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

regulations and rendering certain statements in the S-4 materially incomplete and misleading.

5. In particular, the S-4 contains materially incomplete and misleading information concerning the financial forecasts for the Company and Marvell that were both prepared and relied upon by the Board in recommending the Company's shareholders vote in favor of the Proposed Merger as well as utilized by Cavium's financial advisors, Qatalyst Partners LP ("Qatalyst") and J.P. Morgan Securities LLC ("J.P. Morgan"), in conducting the valuation analyses in support of its fairness opinion.

6. It is imperative that the material information that has been omitted from the S-4 is disclosed prior to the forthcoming stockholder vote in order to allow the Company's stockholders to make an informed decision regarding the Proposed Merger.

7. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, based on Defendants' violation of (i) Regulation G (17 C.F.R. § 244.100) and (ii) Rule 14a-9 (17 C.F.R. 240.14a-9). Plaintiff seeks to enjoin Defendants from holding the stockholders vote on the Proposed Merger and taking any steps to consummate the Proposed Merger unless, and until, the material information discussed below is disclosed to Cavium shareholders sufficiently in advance of the vote on the Proposed Merger or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

9. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

1  render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions

2  of fair play and substantial justice.

3        10.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. §

4  78aa, as well as under 28 U.S.C. § 1391, because Cavium is headquartered in this District.

5  **PARTIES**

6        11.    Plaintiff is, and at all relevant times has been, a holder of Cavium common stock.

7        12.    Defendant Cavium is incorporated in Delaware and maintains its principal executive

8  offices at 2315 North First Street, San Jose, California 95131.  The Company's common stock trades

9  on the NASDAQ under the ticker symbol "CAVM".

10        13.    Individual Defendant Syed B. Ali has served as Cavium's Chief Executive Officer,

11  President, and Chairman of the Board since co-founding the Company in 2000.

12        14.    Individual Defendant Anthony S. Thornley has served as a director of the Company

13  since 2006.

14        15.    Individual Defendant Sanjay Mehrotra has served as a director of the Company since

15  2009.

16        16.    Individual Defendant Edward H. Frank has served as a director of the Company since

17  July 2016.

18        17.    Individual Defendant Brad W. Buss has served as a director of the Company since July

19  2016.

20        18.    Individual Defendant Madhav V. Rajan has served as a director of the Company since

21  2013.

22        19.    The Individual Defendants referred to in paragraphs 13-18 are collectively referred to

23  herein as the "Individual Defendants" and/or the "Board."

24  **CLASS ACTION ALLEGATIONS**

25        20.    Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and

26  the other public shareholders of Cavium (the "Class").  Excluded from the Class are Defendants

27

28

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)**
**OF THE SECURITIES EXCHANGE ACT OF 1934**

herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

21.     This action is properly maintainable as a class action because:

a.     The Class is so numerous that joinder of all members is impracticable.  As of December 19, 2017, there were approximately 69,155,794 shares of Cavium common stock outstanding, held by hundreds of individuals and entities scattered throughout the country. The actual number of public shareholders of Cavium will be ascertained through discovery;

b.     There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

        i)     whether Defendants disclosed material information that includes non-GAAP financial measures without providing a reconciliation of the same non-GAAP financial measures to their most directly comparable GAAP equivalent in violation of Section 14(a) of the Exchange Act;

        ii)     whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the S-4 in violation of Section 14(a) of the Exchange Act;

        iii)     whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

        iv)     whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Merger based on the materially incomplete and misleading S-4.

c.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

e.       The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.       Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.       A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

**I.       The Proposed Merger**

22.       Cavium is a provider of semiconductor processors that enable intelligent networking, communications, and security applications.   The Company's product line includes multi-core processors for embedded and data center applications, network connectivity for serve and switches, storage connectivity, and security processors for offload and appliance.  Syed Ali and Raghib Hussain co-founded the Company in 2000.

23.       On November 20, 2017, Cavium and Marvell issued a joint press release announcing the Proposed Merger, which states in pertinent part:

> **Santa Clara, and San Jose Calif. (November 20, 2017)** - Marvell Technology Group Ltd. (NASDAQ: MRVL) and Cavium, Inc. (NASDAQ: CAVM) today announced a definitive agreement, unanimously approved by the boards of directors of both companies, under which Marvell will acquire all outstanding shares of Cavium common stock in exchange for consideration of $40.00 per share in cash and 2.1757 Marvell common shares for each Cavium share. Upon completion of the transaction, Marvell will become a leader in infrastructure solutions with approximately $3.4 billion[1] in annual revenue.
>
> The transaction combines Marvell's portfolio of leading HDD and SSD storage controllers, networking solutions and high-performance wireless connectivity products with Cavium's portfolio of leading multi-core processing, networking communications, storage connectivity and security solutions. The combined product portfolios

6

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

provide the scale and breadth to deliver comprehensive end-to-end solutions for customers across the cloud data center, enterprise and service provider markets, and expands Marvell's serviceable addressable market to more than $16 billion. This transaction also creates an R&D innovation engine to accelerate product development, positioning the company to meet today's massive and growing demand for data storage, heterogeneous computing and high-speed connectivity.

"This is an exciting combination of two very complementary companies that together equal more than the sum of their parts," said Marvell President and Chief Executive Officer, Matt Murphy. "This combination expands and diversifies our revenue base and end markets, and enables us to deliver a broader set of differentiated solutions to our customers. Syed Ali has built an outstanding company, and I'm excited that he is joining the Board. I'm equally excited that Cavium's Co-founder Raghib Hussain and Vice President of IC Engineering Anil Jain will also join my senior leadership team. Together, we all will be able to deliver immediate and long-term value to our customers, employees and shareholders."

"Individually, our businesses are exceptionally strong, but together, we will be one of the few companies in the world capable of delivering such a comprehensive set of end-to-end solutions to our combined customer base," said Cavium Co-founder and Chief Executive Officer, Syed Ali. "Our potential is huge. We look forward to working closely with the Marvell team to ensure a smooth transition and to start unlocking the significant opportunities that our combination creates."
The transaction is expected to generate at least $150 to $175 million of annual run-rate synergies within 18 months post close and to be significantly accretive to revenue growth, margins and non-GAAP EPS.

24.     The Merger Consideration appears inadequate in light of the Company's recent financial performance and prospects for future growth. For instance, the Company has reported **double-digit sales growth and positive gross income growth since 2013.** Most recently, the Company has reported positive EBITDA earnings for the last four fiscal quarters, and positive EBITDA growth for three of those quarters.

25.     In sum, it appears that Cavium is well-positioned for financial growth, and that the Merger Consideration fails to adequately compensate the Company's shareholders. It is imperative that Defendants disclose the material information they have omitted from the S-4, discussed in detail below, so that the Company's shareholders can properly assess the fairness of the Merger

7

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)**
**OF THE SECURITIES EXCHANGE ACT OF 1934**

1  Consideration for themselves and make an informed decision concerning whether or not to vote in
2  favor of the Proposed Merger.

3  **II.     The Materially Incomplete and Misleading S-4**

4         26.     On December 21, 2017, Defendants caused the S-4 to be filed with the SEC in
5  connection with the Proposed Merger.  The S-4 solicits the Company's shareholders to vote in favor
6  of the Proposed Merger.  Defendants were obligated to carefully review the S-4 before it was filed
7  with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any
8  material misrepresentations or omissions.  However, the S-4 misrepresents and/or omits material
9  information that is necessary for the Company's shareholders to make an informed decision
10  concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a)
11  of the Exchange Act.

12              *Financial Forecasts that Violate Regulation G and SEC Rule 14a-9*

13         27.     The S-4 fails to provide material information concerning the Company's financial
14  forecasts, which were developed by the Company's management and relied upon by the Board in
15  recommending that the shareholders vote in favor of the Proposed Merger.  S-4, 114-15.  These
16  financial forecasts were also relied upon by the Company's financial advisors, Qatalyst and J.P.
17  Morgan, in rendering its fairness opinion.  S-4, 97-98; 105.

18         28.     Specifically, the S-4 provides two sets of financial forecasts developed by Cavium's
19  management, the *Cavium Projections* and the *Adjusted Marvell Projections*.  S-4, 114-15.  As part of
20  the forecast, the S-4 further discloses the values and definitions of several non-GAAP (Generally
21  Accepted Accounting Principles) financial metrics:  (1) Non-GAAP income from operations; (2)
22  Non-GAAP net income per share, diluted; (3) Net Operating Profit After Taxes; (4) Unlevered Free
23  Cash Flow; (5) Unlevered Free Cash Flow (including Stock-Based Compensation); and (6) EBITDA,
24  but fails to provide: (i) the value of certain line items used to calculate these non-GAAP measures, or
25  (ii) a reconciliation to their most comparable GAAP measures, in direct violation of Regulation G
26  and consequently Section 14(a).  S-4, 114-15

27
28

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

29.     Although the S-4 defines each of the aforementioned non-GAAP financial measures and discloses the line items used in each measures' calculation in accompanying footnotes, the S-4 fails to provide the values of these line items, and fails to reconcile each measure to its most comparable GAAP equivalent.  S-4, 114-15.

30.     When a company discloses non-GAAP financial measures in a registration statement that were relied on by a board of directors to recommend that shareholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all forecasts and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP.  17 C.F.R. § 244.100.

31.     Indeed, the SEC has increased its scrutiny of the use of non-GAAP financial measures in communications with shareholders.  Former SEC Chairwoman Mary Jo White has stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as Cavium included in the S-4 here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation. Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data.  I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.  I also urge again, as I did last December, that

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

1    appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[1]

2    32.    The SEC has repeatedly emphasized that disclosure of non-GAAP forecasts can be

3    inherently misleading, and has therefore heightened its scrutiny of the use of such forecasts.[2]  Indeed,

4    the SEC's Division of Corporation Finance released a new and updated Compliance and Disclosure

5    Interpretation ("C&DIs") on the use of non-GAAP financial measures to clarify the extremely narrow

6    and limited circumstances, known as the business combination exemption, where Regulation G would

7    not apply.[3]

8    33.    More importantly, the C&DI clarifies when the business combination exemption does

9    not apply:

10
11        There is an exemption from Regulation G and Item 10(e) of Regulation
          S-K for non-GAAP financial measures disclosed in communications
          subject to Securities Act Rule 425 and Exchange Act Rules 14a-12 and
12        14d-2(b)(2); it is also intended to apply to communications subject to
          Exchange Act Rule 14d-9(a)(2).   This exemption does not extend
13        beyond such communications. Consequently, if the same non-GAAP
          financial measure that was included in a communication filed under
14        one of those rules is also disclosed in a Securities Act registration
          statement, proxy statement, or tender offer statement, this exemption
15        from Regulation G and Item 10(e) of Regulation S-K would not be
          available for that non-GAAP financial measure.

16    *Id.*

17    34.    Thus, the C&DI makes clear that the so-called "business combination" exemption

18    from the Regulation G non-GAAP to GAAP reconciliation requirement applies solely to the extent

19    that a third-party such as financial banker has utilized projected non-GAAP financial measures to

20    _____

21    [1]    Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-*

22    *GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html. (emphasis added)

23    [2]    *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures:  The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation

24    (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into*

25    *Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

26    [3]    *Non-GAAP Financial Measures*, U.S. Securities and Exchange Commission (Oct. 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm#101.  To

27    be sure, there are other situations where Regulation G would not apply but are not applicable here.

10

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

1   render a report or opinion to the Board.  To the extent the Board also examined and relied on internal

2   financial forecasts to recommend a transaction, Regulation G applies.

3        35.     Because the S-4 explicitly discloses that the Board considered the forecasts of future

4   financial and operational results of the combined company, no exemption from Regulation G is

5   applicable.  S-4, 113.

6        36.     At the very least, the Company must disclose the line item forecasts for the financial

7   metrics that were used to calculate the aforementioned non-GAAP measures.  Such forecasts are

8   necessary to make the non-GAAP forecasts included in the S-4 not misleading.   Indeed, the

9   Defendants acknowledge the misleading nature of non-GAAP financial measures, as Cavium

10  stockholders are cautioned:

11          The Unaudited Prospective Financial Information includes certain non-
            GAAP financial measures. Non-GAAP financial measures should not
12          be considered in isolation from, or as a substitute for, financial
            information presented in compliance with GAAP, and non-GAAP
13          financial measures as used by Marvell and Cavium may not be
            comparable to similarly titled amounts used by other companies.
14  S-4, 117.

15       37.     Thus, to bring the S-4 into compliance with Regulation G as well as cure the materially

16  misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information on

17  page 115, Defendants must provide a reconciliation table of the non-GAAP measures to the most

18  comparable GAAP measures.

19       ***Post-Close Employment***

20       38.     The S-4 discloses that Marvell entered into post-close employment arrangements with

21  at least six key Cavium employees including Cavium's Chief Operating Officer, Raghib Hussain, and

22  Corporate Vice President, Anil Jain.  S-4, 78; 123-24.  The S-4 also discloses that "on October 31,

23  2017, representatives of Marvell began evaluating the compensation for certain key employees of

24  Cavium . . . for the purpose of delivering offer letters, which would be contingent upon the closing of

25  the proposed transaction . . ."  S-4, 72.

26

27

28
**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)**
**OF THE SECURITIES EXCHANGE ACT OF 1934**

39.     These disclosures are materially misleading and must be corrected.  First, the aforementioned disclosures fail to provide shareholders with material information regarding the timing of the discussions about post-close employment arrangements.  Although the S-4 discloses that compensation evaluations began on October 31, 2017, it does not disclose when discussions that Marvell wished to retain certain key employees began.   Without this information, Cavium shareholders are unable to discern whether Cavium's Board acted appropriately in allowing management's, especially Hussain's, continued involvement in the sale process.  Thus, the omission of information surrounding the timing of employment discussions renders the S-4 materially misleading.

40.     Clearly, shareholders would find this information material since the Board's unanimous recommendation that shareholders vote in favor the Proposed Merger was based, in part on the following:

- the fact that the consideration proposed by Marvell reflected extensive negotiations between the parties and their respective advisors, and the Cavium board of directors' belief that the agreed Merger Consideration represented the best proposal and economic value available to Cavium shareholders, based upon an overall assessment of the net present value of the risk-adjusted returns that are likely to accrue to shareholders over the long term;

- the expectation that the Merger will result in greater long-term shareholder value than the potential for earnings per share accretion that might result from other alternatives available to Cavium, including seeking an alternative transaction with another third party or remaining an independent public company, in each case, considering the potential for Cavium shareholders to share in any future earnings growth of Cavium's businesses, and the continued expenses of operating a public company and the overall assessment of the net present value of the risk-adjusted returns that are likely to accrue to shareholders over the long term;

- the Cavium board of directors' familiarity with, and understanding of, Cavium's business, assets, financial condition, results of operations, current business strategy, prospects and the risks facing the semiconductor industry and Cavium;

- information and discussions with Cavium's management and advisors regarding Marvell's business, assets, financial condition, results of operations, current business strategy and prospects, including the projected long-term financial results of Marvell as a

12

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

standalone company, the size and scale of the combined company and the expected pro forma effect of the proposed Merger on the combined company;

- the fact that Cavium conducted a thorough process to explore Cavium's strategic alternatives during which representatives of Cavium sought offers from various potential buyers, none of which made an offer or even expressed an interest to engage in substantive discussions concerning a transaction with Cavium;

S-4, 83-84.

41.    In sum, the S-4 independently violates both (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial to their most directly comparable GAAP equivalent, and (ii) Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading.  As the S-4 independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a) of the Exchange Act by filing the S-4 to garner votes in support of the Proposed Merger from Cavium shareholders.

42.    Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class will not be able to make a fully-informed decision regarding whether to vote in favor of the Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I
**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and 17 C.F.R. § 244.100 Promulgated Thereunder)**

43.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44.    Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

1  any security (other than an exempted security) registered pursuant to section 78l of this title."  15
2  U.S.C. § 78n(a)(1).

3        45.     As set forth above, the S-4 omits information required by SEC Regulation G, 17 C.F.R.
4  § 244.100, which independently violates Section 14(a).  SEC Regulation G among other things,
5  requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most
6  directly comparable" GAAP measure, and a reconciliation "by schedule or other clearly
7  understandable method" of the non-GAAP measure to the "most directly comparable" GAAP
8  measure.  17 C.F.R. § 244.100(a).

9        46.     The failure to reconcile the numerous non-GAAP financial measures included in the
10  S-4 violates Regulation G and constitutes a violation of Section 14(a).

11                          **COUNT II**
12   **(Against All Defendants for Violations of Section 14(a) of the Exchange Act and
Rule 14a-9 Promulgated Thereunder)**

13        47.     Plaintiff incorporates each and every allegation set forth above as if fully set forth
14  herein.

15        48.     SEC Rule 14a-9 prohibits the solicitation of shareholder votes in registration
16  statements that contain "any statement which, at the time and in the light of the circumstances under
17  which it is made, is false or misleading with respect to any material fact, or which omits to state any
18  material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. §
19  240.14a-9.

20        49.     Regulation G similarly prohibits the solicitation of shareholder votes by "mak[ing]
21  public a non-GAAP financial measure that, taken together with the information accompanying that
22  measure, contains an untrue statement of a material fact or omits to state a material fact necessary in
23  order to make the presentation of the non-GAAP financial measure…not misleading."  17 C.F.R. §
24  244.100(b).

25        50.     Defendants have issued the S-4 with the intention of soliciting shareholder support for
26  the Proposed Merger.  Each of the Defendants reviewed and authorized the dissemination of the S-4,

14
**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

which fails to provide critical information regarding, amongst other things, the financial forecasts for the Company and Marvell.

51.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the S-4, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

52.     The Individual Defendants knew or were negligent in not knowing that the S-4 is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger.

53.     The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the S-4, rendering the sections of the S-4 identified above to be materially incomplete and misleading.

54.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the S-4.  The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the S-4 or failing to notice the material omissions in the S-4 upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial forecasts.

55.     Cavium is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the S-4.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

56.     The misrepresentations and omissions in the S-4 are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Merger.

57.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT III**
**(Against the Individual Defendants for Violations**
**of Section 20(a) of the Exchange Act)**

58.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

59.     The Individual Defendants acted as controlling persons of Cavium within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Cavium, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

60.     Each of the Individual Defendants was provided with or had unlimited access to copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The S-4 at issue contains the unanimous recommendation of

16

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)**
**OF THE SECURITIES EXCHANGE ACT OF 1934**

each of the Individual Defendants to approve the Proposed Merger.  They were thus directly involved in preparing the S-4.

62.     In addition, as the S-4 sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The S-4 purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

63.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

64.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

65.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.     Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Merger or consummating the Proposed Merger, unless and until the Company discloses the material information discussed above which has been omitted from the S-4;

C.     Directing the Defendants to account to Plaintiff and the Class for all damages sustained

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

1    as a result of their wrongdoing;

2           D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable

3    attorneys' and expert fees and expenses;

4           E.      Granting such other and further relief as this Court may deem just and proper.

5                                      **JURY DEMAND**

6           Plaintiff demands a trial by jury on all issues so triable.

7    Dated:  January 2, 2018

8

9                                                      Respectfully submitted,

10                                                     **FARUQI & FARUQI, LLP**

11   **OF COUNSEL:**
                                                       By: _/s/ Benjamin Heikali____
12   **FARUQI & FARUQI, LLP**                          Benjamin Heikali, Bar No. 307466
     Michael Van Gorder (#6214)                        10866 Wilshire Blvd., Suite 1470
13   20 Montchanin Road, Suite 145                     Los Angeles, CA 90024
     Wilmington, DE 19807                              Tel.: (424) 256-2884
14   Tel.: (302) 482-3182                              Fax: 424.256.2885
     Email: mvangorder@faruqilaw.com                   Email: bheikali@faruqilaw.com
15

16   **FARUQI & FARUQI, LLP**                          *Counsel for Plaintiff*
     Nadeem Faruqi
17   James M. Wilson, Jr.
     685 Third Ave., 26th Fl.
18   New York, NY 10017
     Tel.: (212) 983-9330
19   Email: nfaruqi@faruqilaw.com
     Email: jwilson@faruqilaw.com
20

21   *Counsel for Plaintiff*

22

23

24

25

26

27
                                                  18
28   **CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
     OF THE SECURITIES EXCHANGE ACT OF 1934**

## CERTIFICATION OF PROPOSED LEAD PLAINTIFF

I, Scott Fineberg ("Plaintiff"), declare, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed a draft complaint against Cavium, Inc. ("Cavium") and its board of directors and has authorized the filing of a complaint substantially similar to the one I reviewed.

2. Plaintiff selects Faruqi & Faruqi, LLP and any firm with which it affiliates for the purpose of prosecuting this action as my counsel for purposes of prosecuting my claim against defendants.

3. Plaintiff did not purchase the security that is the subject of the complaint at the direction of Plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

4. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

5. Plaintiff's transactions in Cavium securities that are the subject of the complaint during the class period specified in the complaint are set forth in the chart attached hereto.

6. In the past three years, Plaintiff has not sought to serve nor has served as a representative party on behalf of a class in an action filed under the federal securities laws, except as specified below:

7. Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States that the foregoing information is correct to the best of my knowledge.

Signed this 29th day of December 2017.

Scott Fineberg

| Transaction (Purchase or Sale) | Trade Date | Quantity |
|---|---|---|
| Purchase | 02/02/17 | 100 |
|  |  |  |
|  |  |  |
|  |  |  |